UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY LORENZO,
*guardian for Lydell J. Burt, a legally*
*incapacitated person on behalf of*
Lydell J. Burt,

      Plaintiff,        Case No. 1:10-cv-420

v.        HON. JANET T. NEFF

L. PAUL BAILEY et al.,

      Defendants.
_____/

**OPINION**

Tammy Lorenzo, mother of Lydell J. Burt, filed this case on his behalf after he suffered permanent brain damage from an alleged failure to provide medical treatment for an ear infection during his three-week incarceration at the Berrien County Jail, which resulted in severe mastoiditis with penetration to the brain, and four brain surgeries in 2007, leaving him legally incapacitated. Named as defendants are Sheriff L. Paul Bailey, Lt. Corey Burke, Berrien County, three doctors and six nurses. Pending before the Court is Defendant Dr. Lynn S. Gray's Motion to Dismiss or for Judgment pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or 12(c). For the reasons that follow, the motion is properly denied.[1]

---

[1] This motion is decided without oral argument. Having reviewed the parties' written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

I. Factual Summary[2]

Burt was sentenced as a juvenile to 35 days in the Berrien County Jail (Compl. ¶ 10).[3] At the time of his incarceration on October 17, 2007, Burt had just turned seventeen years of age, and was suffering from an ear infection in his right ear, of which defendants were informed. During his incarceration the earache/ear infection progressively worsened, despite being seen by various medical personnel within the Berrien County Jail. His mother (Plaintiff) repeatedly advised jail officials and medical staff over the course of his incarceration that her son was suffering from an earache/ear infection and was in severe pain, and subsequently after treatment, that it had not improved and he needed medical attention.

As Burt's condition continued to worsen, he had fluid and puss/blood draining from his ear. He experienced weight loss, dehydration, an inability to hold his head upright, general weakness and imbalance, a yellow hue to his skin and pain in his ear and neck, as observed by his mother, who informed jail officials and/or medical staff on Sunday, October 28, 2007, that her son requested to go to the hospital and that he needed emergency medical attention. On Monday, October 29, Burt continued to complain of severe pain to the back of his head and neck and drainage from his right ear. Burt began vomiting and his condition worsened to the point that he reportedly passed out. On the morning of October 30, 2007, Burt was transported by wheelchair to medical observation (known as the "drunk tank") and was purportedly placed on sick call with 30 minute checks on a temporary basis. Burt was examined by medical staff over the course of the next several days at the

---

[2] The facts are taken as set forth by Plaintiff, for purposes of this motion only, and are not intended as a resolution of any facts in dispute (*see* Pl. Br., Dkt 136, at 1-4; Compl. ¶¶ 29-86).

[3] Plaintiff states in her brief, that Burt was sentenced to 30 days in jail, which is more likely accurate (Pl. Br. at 1); however, the complaint states the sentence was 35 days in jail.

jail, but without further testing or outside medical evaluation, having been returned to his cell on November 1. Burt's mother continued to press jail personnel for medical assistance for him, since by November 5, 2007, he was unable to walk due to pain, dizziness and weakness.

On the morning of Wednesday, November 7, Burt was examined by a jail doctor (Defendant Christopher J. Prince, M.D.) and was assessed with "severe otitis media or abscesses/cyst within right ear canal and a STAT consult was made with an ear, nose and throat physician" (Compl. ¶ 72). At approximately 12:41 p.m. on November 7, a deputy authored and transmitted a wizard mail to the sentencing judge, stating: "The above has been scheduled for a 2 hour brain scan and he gets out 11/15. Would you consider suspending the remaining jail time, releaving [sic)] us from the liability and responsibility of this procedure?" (*id.* ¶ 73).

Shortly thereafter, the judge suspended Burt's sentence, and at approximately 1:45 p.m. on November 7, 2007, Burt was released from jail, and subsequently dropped off by two sheriff deputies at Lakeland Hospital for a CT scan. On November 9, 2007, his mother transported him to the emergency room of a South Bend, Indiana, hospital where he was diagnosed with bacterial meningitis and right mastoiditis. Burt was admitted to the Intensive Care Unit and underwent four brain surgeries between November 9, 2007 and December 2, 2007, and was eventually transferred to the University of Michigan's Mott Children's hospital, where he remained a patient through January 11, 2008. As a result of his injuries, Burt has suffered significant cognitive defects that are permanent in nature.

During the time Burt was incarcerated, Defendant Gray ("Defendant") was the designated "medical authority" at the Berrien County Jail pursuant to a Medical Services Agreement.[4] Under the Agreement, Defendant was responsible for providing medical care to jail inmates, assisting in developing and implementing medical and nursing care policies and procedures, and developing/reviewing/overseeing training of medical services and support staff. He approved and supervised medical procedures in the jail, acted as liaison between the other physicians under contract and the administration of the jail, and he countersigned all medical orders at the jail. As the "medical authority," Defendant was to "provide a weekly chart review and quality assurance review." (*See* Compl. ¶¶ 15, 20 and Pl. Ex. A ¶¶ 4M, 4N, 4O, 8).

## II. Legal Standards

In deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must treat all well-pleaded allegations in the complaint as true and draw all reasonable inferences from those allegations in favor of the nonmoving party. *Lambert v. Hartman,* 517 F.3d 433, 439 (6th Cir. 2008); *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir. 2006). "A claim survives this motion where its '[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.'" *Zaluski v. United Am. Healthcare Corp.,* 527 F.3d 564, 570 (6th Cir. 2008) (quoting *Bell*

---

[4] Defendant objects to Plaintiff's reliance on the contents of the Medical Services Agreement, attached as Exhibit A to Plaintiff's response to Defendant's motion. Because the Agreement was referenced in the complaint (*see, e.g.,* ¶ 15), and is directly relevant, the Court finds Defendant's objection unwarranted. "[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335-36 (6th Cir. 2007). Even absent the Court's consideration of Exhibit A, the Court would reach the same result with respect to this motion, based on Plaintiff's allegations in the complaint.

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007)).  Stated differently, the complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Twombly,* 550 U.S. at 570.  "The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *German Free State of Bavaria v. Toyobo Co, Ltd.,* 480 F. Supp. 2d 958, 963 (W.D. Mich. 2007); *see also Twombly,* 550 U.S. at 555 (citing FED. R. CIV. P. 8(a)(2)).  Accordingly, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under a viable legal theory.  *Bavaria,* 480 F. Supp. 2d at 963; *see also Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996).

For purposes of a motion pursuant to Rule 12(c), the complaint must be construed in the light most favorable to the nonmoving party, and all well-pleaded material allegations of the pleadings must be taken as true; the motion is granted only when the moving party is entitled to judgment as a matter of law.  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007); *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group, a Div. of Reed Elsevier Group, PLC,* 463 F.3d 478, 487 (6th Cir. 2006).

"'To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'"[5]  *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (citations omitted).  In *Phillips v. Roane County, Tenn.,* 534 F.3d 531, 539-40 (6th Cir. 2008), the Sixth Circuit set forth the analysis for a § 1983 claim based on deliberate indifference to an inmate's medical needs:

---

[5]Defendant concedes for purposes of his motion that he is a state actor as alleged in Plaintiff's complaint (Def. Br. at 5 n.2).

5

A constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). We have previously explained that "where a plaintiff's claims arise from an injury 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,'... it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 899–900 (6th Cir. 2004) (citation omitted). In contrast, the subjective component requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer,* 511 U.S. at 837, 114 S. Ct. 1970). Although the latter, subjective standard "is meant to prevent the constitutionalization of medical malpractice claims," a plaintiff need not show that the officer acted with the specific intent to cause harm. *Id.* Indeed, "'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Id.* (quoting *Farmer,* 511 U.S. at 836, 114 S. Ct. 1970). Officials, of course, do not readily admit this subjective component, so "it [is] permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge." *Id.*

### III.. Analysis

Defendant seeks dismissal on the grounds that Plaintiff's complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983, pursuant to the standard in *Twombly,* 550 U.S. at 555-56.  He argues that Plaintiff has failed to provide the requisite factual allegations to render the claims against Defendant "plausible," and therefore, the claims against him in both his personal and official capacities should be dismissed pursuant to Rule 12(b)(6) or Rule 12(c).  The Court disagrees.

### A.  Personal Capacity Suit

For purposes of his motion, Defendant does not challenge that Burt had a serious medical need; thus, the objective component of the deliberate indifference standard is not at issue.  The question is whether the subjective component is met, i.e., whether Plaintiff has alleged "'facts which,

6

if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Phillips*, 534 F.3d at 540 (quoting *Comstock,* 273 F.3d at 703).

Although the numerous allegations in the complaint are not specifically alleged as to each particular defendant, the allegations are sufficient to state a claim for deliberate indifference against Defendant Dr. Gray based on the circumstances presented. Defendant asserts that Plaintiff claims that Burt was examined by co-defendants Dr. Prince or Dr. Robert M. Stephen on several occasions, but not Defendant Dr. Gray, and although the complaint outlines a series of events involving Burt's care and treatment (or alleged lack thereof) during his incarceration, there are no allegations of actions or inactions by Defendant suggesting that he "recklessly disregarded" the risk of serious harm to Plaintiff. *See Phillips*, 534 F.3d at 540. The Court disagrees.

Plaintiff alleges that Defendant had a Medical Services Agreement with Berrien County/Berrien County Jail under which Defendant provided medical care to the inmates in the jail medical unit and countersigned all medical orders at the Jail, and additionally, that under the Agreement, Defendant was the "Medical Authority" at the Berrien County Jail (Compl. ¶ 20). Plaintiff sets forth specific allegations of Burt's progressively worsening, serious medical needs over the course of three weeks of incarceration, and of medical treatment or the lack thereof in light of Defendant's obligation to provide medical services and care to jail inmates. Further, as the "Medical Authority," for the Jail, Defendant was personally responsible for weekly chart review: "[t]he physician designated as medical authority shall provide a weekly chart review and quality assurance review" (Pl. Br. Ex A ¶¶ 8, 4M). Such responsibilities are a sufficient basis for liability on the part

7

of Defendant with respect to his medical services. Moreover, Plaintiff has sufficiently alleged Defendant's liability with respect to oversight, policies, supervision and training at the Jail.

Contrary to Defendant's argument, the complaint contains more than mere conclusory and generalized allegations to support a claim of deliberate indifference. Plaintiff alleges that Defendants did not provide medical assistance and attention for Burt despite his obvious need; that the training, policies, and procedures were inadequate; that there was no proper and appropriate method of identifying serious medical needs or emergencies and intervening in a timely manner, and that "[d]efendants engaged in conduct so reckless that it demonstrated a substantial lack of concern for whether or not injury would result to [Burt]" (Compl. ¶¶ 102-04).

Additionally, despite his serious medical condition, and Defendants' knowledge of his serious condition and medical history, Burt was placed in the drunk tank for a period in excess of 48 hours without a blanket or mattress pad (Compl. ¶¶ 51-58, 105). It is also noteworthy that it can be reasonably inferred from the complaint allegations that the cost of medical care was a consideration or reason for the indifference to Burt's serious medical needs. When Plaintiff's mother contacted Jail officials on October 28 concerning Burt's need for emergency medical attention, she was asked who would pay for it, and when she responded that either Medicaid or she personally would pay, she was informed that it would have to be a life or death situation before Burt would be taken to the hospital, and she was also told later that day that her son was fine (*id*. ¶¶ 44-45). Ultimately, according to the complaint allegations, once Burt's condition necessitated a brain scan, Jail officials sought and obtained the suspension of Burt's sentence in order to release him early and avoid liability and responsibility for him (*id*. ¶¶ 73-74).

Plaintiff has sufficiently alleged a claim against Defendant Dr. Gray for deliberate indifference in his personal capacity. Defendant is not entitled to dismissal of this claim.

## B. Official Capacity Suit

Defendant argues that Plaintiff's action against him in his official capacity is improper because the real party in interest is Berrien County, and Defendant is an unnecessary party. That is, because Berrien County is a named defendant in this action, and Plaintiff's claims are pled against the County, the claims against Defendant in his official capacity are duplicative and unnecessary, and the "official capacity" suit against him should be dismissed.

The Court declines to dismiss the official capacity suit on the grounds it is duplicative. Further, for the reasons discussed with regard to the personal capacity suit, the Court otherwise finds no proper basis for dismissal at this juncture of the case.

"A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 68 (1989)). The Supreme Court has explained the basis of this rule:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237-238, 94 S. Ct. 1683, 1686-1687, 40 L. Ed. 2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55, 56 L. Ed. 2d 611 1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon* [*v. Holt,*] 469 U.S. [464,] 471-472, 105 S. Ct., at 878. It is *not* a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) (emphasis in original).

9

Plaintiff does not expressly disagree that Berrien County is the real party in interest with respect to the official capacity suit, but argues vehemently that Defendant relies on no authority to support the "preposterous assertion" that the official capacity suit against Defendant should be dismissed as duplicative (Pl. Br., Dkt 136 at 12). However, Plaintiff cites no contrary authority and provides the Court no persuasive reasoning for maintaining the action against Defendant in his official capacity.

Nonetheless, it appears courts are divided on the issue whether dismissal is proper. Some courts have held that suits against officers in their official capacities are properly dismissed when the plaintiff sues the municipality directly:

> The Supreme Court has held that it is redundant to allege claims against both a municipality and against its officers in their official capacities, as the latter necessarily implicates the former. *See Kentucky v. Graham,* 473 U.S. 159, 165–166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999). Therefore, when a civil rights plaintiff also sues the municipality directly, district courts generally dismiss the official capacity suits against the municipal employees. *See Vance v. County of Santa Clara,* 928 F. Supp. 993, 996 (N.D. Cal. 1996); *Carnell v. Grimm,* 872 F. Supp. 746, 752 (D. Haw. 1994); *Willis v. Bell*, 726 F. Supp. 1118, 1124 (N.D. Ill. 1989).

*Williams v. City of Saginaw,* Nos. 00–10241–BC, 00–10244–BC, 2002 WL 1798907, at *13 (E.D. Mich. Aug. 6, 2002) (unpublished opinion). However, other courts have held to the contrary, even though acknowledging the holding in *Williams*:

> The Court acknowledges that Plaintiff's claims against the individual Defendants in their official capacities are duplicative of those made against the City of Columbus. *Monell* and its progeny, however, clearly recognize and condone official capacity claims against local government employees, and the courts routinely countenance such lawsuits. Defendants have provided no binding authority from the Supreme Court or the Court of Appeals for the Sixth Circuit from which this Court could conclude that dismissal of the official capacity claims against the Defendants is proper.

*Porter v. City of Columbus,* No. C2–06–1055, 2008 WL 202891, at *6 (S.D. Ohio Jan. 22, 2008) (unpublished opinion); *see also Crockett v. City of Ashtabula, Ohio,* No. 1:11 CV 555, 2011 WL 3608386, at *4 (N.D. Ohio Aug. 16, 2011) (unpublished opinion).

In this case, Defendant is not merely an employee of the governmental entity being sued but instead a medical doctor under contract to the County, and the official capacity suit is premised on the provision of medical care uniquely within the expertise of the individual doctor rather than the County generally. Thus, the argument that Defendant Gray is an unnecessary and duplicative party is certainly not compelling. Absent binding, persuasive authority supporting dismissal, this Court declines to dismiss Plaintiff's official capacity suit against Defendant as duplicative.

The Court likewise finds Defendant's other asserted grounds for dismissal of the official capacity suit untenable under Rule 12(b)(6) and Rule 12(c) standards. Plaintiff's complaint sufficiently alleges a claim against Defendant in his official capacity on the basis of his role as one of the policymakers for Berrien County in the development and implementation of medical and nursing care at the Berrien County Jail, and with regard to alleged defunct policies and customs, or lack thereof, pertaining to medical care for inmates (*see, e.g.,* Compl. ¶¶ 20, 91(j) and 95).

The complaint alleges that Defendant assisted Berrien County and Sheriff Bailey in developing and implementing medical and nursing care within the Berrien County Jail, acted as liaison between other physicians and administration of the jail, countersigned all medical orders at the Berrien County Jail, and was the Medical Authority at the Jail (Compl. ¶ 20). Based on the numerous allegations in the complaint, the nature and extent of Defendant's role as a policymaker and his responsibility with respect to jail medical procedures and/or customs is a question of fact, and dismissal pursuant to Rule 12(b)(6) or 12(c) is improper.

Moreover, as noted earlier in this opinion, Defendant had a Medical Services Agreement with Berrien County/Berrien County Jail under which he was individually designated as the "Medical Authority." Under the Agreement, the doctors, including Defendant, agreed to:

> Assist the Sheriff's Department in developing and implementing policies that assure high quality medical and nursing care. Specific policies shall be in force at all times for:
> 1. Emergency treatment of inmates
> 2. Prescription medicines.

(Pl. Br., Ex. A ¶ 4A). Beyond the specifically enumerated medical services and policy and procedure responsibilities to be performed by the doctors under the Agreement, Defendant's designation as the "Medical Authority" assigns him individual responsibility for providing "a … quality assurance review" as well as other policy and procedure oversight (*id.* ¶ 4).

Defendant's motion is properly denied with respect to Plaintiff's claim against him in his official capacity.

## IV.  Conclusion

"To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'" *Fabian v. Fulmer Helmets, Inc.,* 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Twombly,* 550 U.S. at 556, 570). "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S. Ct. at 1950. "So long as [the court] can 'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian,* 628

F.3d at 281 (quoting *Iqbal,* 129 S. Ct. at 1949) (internal citation deleted). Based on the Court's review, Plaintiff has met this standard with respect to his claims against Defendant, both in Defendant's personal capacity and in his official capacity.

Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(6) and/or Rule 12(c) is properly denied. An Order will be entered consistent with this Opinion.


DATED: January 26, 2012 /s/ Janet T. Neff
JANET T. NEFF
United States District Judge

13